PAULINE LEMELSON, Appellant, v. LEONARD J. MARQUIS and VICTOR CORTES, Individually and as Copartners Trading under the Firm Name and Style of L. J. MARQUIS & Co., Respondents.

First Department, May 31, 1940.

Jacob Scholer of counsel [Milton Kunen and Sherwood Maggin with him on the brief; Kaye, Scholer, Fierman & Hays, attorneys]. for the appellant.

Frederick Zorn of counsel [Abraham Rossett with him on the brief; Kahn & Zorn, attorneys], for the respondents.

GLENNON, J. The defendants Marquis and Cortes are copartners in a stock brokerage business. Marquis is the senior member of the firm. Plaintiff is a sister of the wife of Marquis. She made her home with him and his family for a great many years. In 1923, Marquis opened an account for the plaintiff with the partnership of which he was then a member. When the defendants' present firm was organized in 1932, the account was transferred to it. Marquis had complete charge of the account at all times. Plaintiff's original investment in the account amounted to $200. It is quite apparent that the account was handled successfully, since it appears that between the date it was opened and the time when certain controversies arose, the plaintiff had withdrawn profits totaling about $15,000.

Marquis and his wife, in the early part of 1935, had matrimonial difficulties, with the result that they separated. Plaintiff, in February of that year, asked the defendants to forward to her the balance of her account. They sent her their check in the sum of $3,717.62 on February 28, 1935, " representing balance in full to date due you." They also inclosed therewith statements of her accounts and advised her that the accounts " are now clear." The check and statements were retained by plaintiff until August, 1935, when the check was returned to the defendants.

Plaintiff in January, 1936, instituted this action to recover from the defendants the sum of $9,427.12 with interest. In her complaint she alleged in substance, as a first cause of action, that her account showed a credit balance of the amount sued for and that defendants refused to pay it upon her demand. In her second cause of action she charged " that the defendants did wrongfully, fraudulently and unlawfully misappropriate and convert to their own use out of the account of the plaintiff " the sum of $9,427.12, payment of which she had demanded.

The answer contained a general denial and, in addition thereto, three affirmative defenses: (1) That plaintiff is estopped from asserting any claim because she had confirmed and ratified all the transactions which had taken place in her account; (2) that the defendant Marquis with the full knowledge and consent of plaintiff was permitted to conduct the two transactions involved in this action for his own convenience and that the profits resulting therefrom belong to the defendant Marquis and not the plaintiff; (3) that the balance due the plaintiff was represented by the check which had been tendered but had been refused by plaintiff. Incidentally, it should be noted that shortly after this action was commenced defendants deposited with the court the sum of $3,735.62 which they conceded to be due to plaintiff.

It appears that the defendants carried two accounts on their books, one in the name of the wife of Marquis and the other in his daughter's name. In the early part of 1933 Marquis purchased 200 shares of North American Edison preferred at 74⅛ for his wife's account and 100 shares at the same price for his daughter's account. This stock was held in these accounts until the month of December, 1933. Between December 19 and December 27 of that year he sold the 300 shares on the Stock Exchange at prices ranging between 44½ and 47½. At the same time he purchased 200 shares which were credited to plaintiff's account and 100 shares for what has been described as the Gladys Hecht account. He contends that these transactions were had with the full knowledge and approval of the plaintiff for the purpose of establishing tax losses which later might be reflected in his income tax returns. He asserted, in substance, that 200 shares of this stock which found its way into plaintiff's account actually belonged to him. In February, 1934, he repurchased the 300 shares for his wife's and daughter's accounts and at the same time sold 200 shares out of the plaintiff's account and 100 shares out of the Gladys Hecht account. The stock in the meanwhile had advanced in price so that the deal as to the 200 shares in plaintiff's account showed a profit of $4,583.50. Concededly, Marquis withdrew these profits from the plaintiff's account in two installments. Plaintiff claims that the profits belonged to her, whereas the defendant Marquis contends that they were his. It is significant that on February 28, 1934, after Marquis had withdrawn the profits and plaintiff had due notice thereof, she certified in writing: " I hereby confirm that my account as above stated is correct." Furthermore, under date of September 29, 1934, she advised one Hiram E. Decker, a certified public accountant, in writing as follows: " The above list of securities, with $3,825.95 debit balance is correct." Under the

same date, referring to her second account, she wrote to Decker: " The above list of securities, with $5,496.78 credit balance is correct." The statements then under consideration reflected the transactions in North American Edison Preferred.

The other transaction involved a short sale of 1,100 shares of Loew's stock. Marquis claims that with the approval of the plaintiff he used her account for the purpose of the sale. Without going into details as to the exact nature of the transactions here referred to, it is sufficient to say that they took place in the months of December, 1934, and the early part of January, 1935. The profit amounted to $1,126 which Marquis withdrew from plaintiff's account. Plaintiff asserts that she is entitled to receive this sum and the defendant Marquis denies it. Thus it will be seen, in the final analysis, that the main issue for the determination of the jury was, did the trades in North American Edison Preferred and Loew's belong to plaintiff or to Marquis?

An examination of the record in this case leads one to the conclusion that the jury brought in a proper verdict. The plaintiff apparently was thoroughly familiar with the course of procedure which was followed on the Stock Exchange. She was well acquainted with the language and expressions used by brokers. She made it a practice to examine the purchase and sales slips and also the statements which she received from her brother-in-law's firm. According to her own testimony, after she complained of a loss of over $2,000 in her account in the summer of 1933 as a result of the purchase of copper, Marquis, who had handled it for her, transferred the loss from her to one of his own accounts. At that time peace and tranquillity reigned in the Marquis household. However, conditions changed, as we have seen, in the early part of 1935 with the result that plaintiff and her brother-in-law were no longer on friendly terms. The jury could well have found that the basis of this litigation was an afterthought on the part of plaintiff, growing out of the fact that her sister and Marquis had become embroiled in a matrimonial squabble.

We find no substantial errors in the record which would require us to reverse and order a new trial. A reading of the colloquy which took place between the court and counsel in reference to the exclusion of the income tax return of the defendant Marquis indicates that the ruling of the court was correct. The proposed testimony as to the alleged services rendered by plaintiff to the Marquis family was excluded properly. So, also, the conversations which were alleged to have taken place between the plaintiff and the attorney for the defendants before this action was instituted were not binding upon the defendants and consequently the ruling

was correct. The charge of the court was exceedingly fair. Of course, it should be read in connection with the testimony adduced upon the trial. The questions in dispute and the law pertaining thereto were submitted to the jury in a clear and concise manner.

Lastly, we come to a consideration of the final point which has to do with the tender into court of the amount of money which defendants admit was due plaintiff. The disposition made and the reasons assigned therefor by the trial justice in his opinion are substantiated by the record. Since the jury has found upon the facts which were litigated during the trial that the defendants were not responsible in damages to the plaintiff, the tender by defendants of the full amount due on February 28, 1935, coupled with the fact of the retention of the check by plaintiff until the month of August under the circumstances here disclosed, deprives the plaintiff of any right she might otherwise have to receive interest. Furthermore, the defendants as an affirmative defense have set forth facts which find support in the record and indicate that a proper legal tender was made before this action was instituted. (*Wilson* v. *Doran*, 110 N. Y. 101; *Hirsch* v. *Spitzer*, 208 App. Div. 711; *Burrows* v. *Maritime Warehouse Co., Inc.*, 188 id. 221; *Wright* v. *Robinson & Co.*, 84 Hun, 172.)

The judgment and order should be affirmed in all respects, with costs.

MARTIN, P. J., and DORE, J., concur; O'MALLEY and UNTERMYER, JJ., dissent and vote to reverse and grant a new trial on account of errors in the exclusion of evidence and in the court's charge.

Judgment and order affirmed, with costs.